(Judge Marvin sitting in place of Judge Parker.)

STERLING V. BOWLING GREEN.

1. SECTIONS 1536-100 (4 ED.) REV. STAT. EMPOWERS MUNICIPALITIES TO LICENSE VEHICLES—"VEHICLES" DEFINED.

   Power is conferred upon municipal corporations by Sec. 1536-100 (4 ed.) Rev. Stat. to exact a license fee from residents and nonresidents using horses and vehicles upon the streets of the municipality, and to impose a penalty for the enforcement thereof. The word "vehicles" used in said section, includes all classes and kinds of conveyances, whether used for hire or not.

2. ORDINANCE IMPOSING LICENSE FEE UPON PERSONS USING STREETS NOT UNCONSTITUTIONAL.

   A municipal ordinance making it unlawful for the resident owner of any vehicle, to use or draw the same upon the streets without obtaining a license and paying a fee therefor, which fee is graduated according to the number of horses, the use of the streets, etc., and which ordinance, with reference to nonresidents, applies only to those hauling heavy articles or peddling milk and vegetables, is not unreasonable, nor an unwarranted and unconstitutional interference with the rights of citizens and private property guaranteed by the bill of rights (Secs. 1, 2, Art. 1, Ohio Const.); nor does such ordinance discriminate unfairly between residents and nonresidents.

3. JUDICIAL POWER NOT CONFERRED UPON CITY AUDITOR OR CHIEF OF POLICE, WHEN.

   Judicial power is not conferred upon a city auditor and chief of police by an ordinance which provides that if the former is not satisfied with the description of vehicles furnished by an applicant for a vehicle license, the matter shall be referred to the latter for examination and report. Such provision does not take away the right to test the matter in the courts.

4. PART OF ORDINANCE MAY BE VALID AND PART INVALID.

   Part of a municipal ordinance may be void and the remainder valid. Where the parts are not so connected in subject-matter, or inseparable in their provisions as to warrant the conclusion that the council would not have passed the ordinance without the invalid portion, the valid part will be upheld and the invalid portion rejected.

ERROR to Wood common pleas court.

**Baldwin & Harrington,** for plaintiff in error.

**P. J. Chase,** city solicitor, for defendant in error.

**HULL, J.**

The plaintiff in error in this case was convicted before the mayor of the city of Bowling Green of the violation of a city ordinance, was fined and assessed the costs, and from this judgment of the mayor he prosecuted error to the court of common pleas, where the judgment of the mayor was affirmed, and error is here prosecuted to reverse both judgments.

The ordinance, which the plaintiff in error was convicted of violating, and which it appears to be conceded he did violate, was passed by the council of the city of Bowling Green to provide for a license fee for vehicles drawn upon the streets of that city, and provides for a penalty for the enforcement of the ordinance. It is claimed by the plaintiff in error that the city of Bowling Green had no authority to pass such an ordinance under the statutes of this state, and that if it had, the ordinance passed is unconstitutional and void, and that therefore the judgment should be reversed.

The ordinance provides for the imposition of a license fee upon all residents of the city of Bowling Green who make use of the streets by the use of automobiles or any kind of a vehicle drawn by horses, and certain provisions are made to apply to those persons who live outside of the city of Bowling Green who come into the city and make use of its streets with their vehicles.

Section 1 of the ordinance provides that it shall be unlawful for a resident or residents of said city being the owner or owners of any vehicle drawn upon the streets of the city, to use or draw said vehicles upon said streets without first having paid the license fee to said city as required in the following sections of the ordinance.

Section 2 provides for the license fee to be imposed upon residents of Bowling Green for the use of different kinds of vehicles, and describes the vehicles: one-horse wagons, two-horse wagons, hacks, buggies, surries, and all kinds of vehicles including automobiles and other vehicles of that character propelled by electricity or gasoline, and a license fee is imposed under this section running from one dollar for a one-horse buggy to five dollars on an automobile, with intervening amounts imposed according to the character of the vehicle, and the effect that the use of the vehicles would have upon the streets; imposing a larger license fee for a two-horse vehicle, and imposing a still larger fee for drays

and heavy wagons and vehicles of that character. The purpose being to require a license fee for the use of the streets, with any kind of a vehicle, by the citizens of Bowling Green; that is, vehicles drawn by horses or propelled by electricity, etc., for we do not think the ordinance covers vehicles such as hand carts.

Section 3 of the ordinance relates to persons who live outside of the city of Bowling Green, and requires such persons to pay a license fee when they come into the city using vehicles for the purpose of hauling heavy articles, such as coal, brick, tiling, etc., or engage in the business of peddling milk or vegetables over and upon the streets of Bowling Green. The license fee in such case is three dollars. It is provided further that on occasions of large meetings, as at the county fair, vehicles for carrying passengers shall pay a license fee of five dollars per day for those carrying five passengers and for those carrying more than five passengers, ten dollars per day. Except these provisions, there is nothing in the ordinance imposing license fees on persons residing outside of the city who may use the streets of the city when they come within its limits.

The ordinance provides for the fixing of a plate or tag upon the vehicles showing that the license has been paid; provides for the making of an application to the city auditor for the license, and provides that if the auditor is not satisfied with the description of the vehicle given by the owner, he may refer the matter to the chief of police, who shall report to the auditor. The ordinance also provides that where a man has one horse and more than one vehicle he shall not be required to pay but one fee; but if he has two horses he shall pay two license fees.

The general intent and purpose of this ordinance is to require all the citizens of Bowling Green to pay a license fee or tax or toll for the use of the streets of the city when used by such vehicles as are mentioned in the ordinance.

The power to pass such an ordinance, it is said by the plaintiff in error, has not been conferred upon the city by the statutes of this state.

Section 1536-100 (4 ed.) Rev. Stat. (96 O. L. 21, Sec. 7) provides:

"All municipal corporations shall have the following general powers and council may provide by ordinance or resolution for the exercise and enforcement of the same:

Then Subd. 9 provides:

"To regulate the use of carts, drays, wagons, hackney coaches, omnibuses, automobiles, and every description of carriages kept for hire or livery stable purposes; and to license and regulate the use of the

streets by persons who use vehicles, or solicit or transact business thereon.''

It is said that the provision of this section in regard to license, refers only to the kind of vehicles mentioned in the first part of the statute, to wit: carts, drays, wagons, hackney coaches, omnibuses, automobiles and every description of carriages kept for hire or livery stable purposes;'' this follows, however, ''to license and regulate the use of the streets by persons who use vehicles, or solicit or transact business thereon.''

Before the passage of the new code, the power relating to this subject was found in Sec. 1692 Rev. Stat., Subd. 10, in this language: ''To regulate the use of carts, drays, wagons, hackney coaches, omnibuses, and every description of carriages which may be kept for hire, or livery stable purposes.'' That was all there was of the section at that time, but when the new code was 'passed this further provision was added: ''and to license and regulate the use of the streets by persons who use vehicles, or solicit or transact business thereon.''

It seems to us that it was the intention of the legislature by the passage of this act in this amended form to grant a greater power than had been conferred by the former act; the language of that act expressly restricting this power to the regulation of the kind of vehicles there named and vehicles ''which may be kept for hire or livery stable purposes.'' Under that act it had been held that a license fee might be imposed upon those who used vehicles of this character, but the new and amended act in express language, gives the power to municipalities to license and regulate the use of all kinds of vehicles, the language being the use of the streets by persons who use vehicles; using most general terms. The word, ''vehicles,'' covers all classes and kinds of conveyances, whether used for hire or not, and seems to contemplate the licensing of all persons who use the streets with any kind of vehicle. We see no reason why such a power as this cannot be conferred upon a city, unless there is something in the constitution to prohibit it.

It is said that the power attempted to be exercised under this ordinance, even if it be conferred by statute, is unconstitutional; that it is an unwarranted and unconstitutional interference with the rights of citizens and the right of private property which is guaranteed to the citizens under Secs. 1 and 2 of the bill of rights.

Section 1, Art. 1, provides:

''All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending

life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

Section 2, Art. 1, provides:

"All political power is inherent in the people. Government is instituted for their equal protection and benefit;" and it is urged that the attempt to restrict the use of the streets in such a manner as this is in violation of these provisions of the constitution; that a man who is the owner of a horse and buggy has a right to use it and drive it upon the streets of the city when he sees fit and without obtaining permission of the council or any officer of the city, and without paying any license fee therefor; it is urged, that it would be no more unreasonable to require pedestrians walking upon the sidewalks to pay a license fee for that privilege. And the cases in some of the states sustain this proposition; especially the state of Illinois.

It is there held that such a license fee as this cannot be imposed by the municipality, that such license can only be required of those who are engaged in special occupations, such as teamsters and hackmen, and others whose business has an unusual tendency to wear out the streets and put them out of repair, and the license fee thus imposed is held by the supreme court of Illinois to be rather in the nature of a tax on occupations than a license fee for the privilege of using the streets. This was held in the People v. Palace Car Co. 175 Ill. 125 [51 N. E. Rep. 664], and in another decision by the appellate court of Illinois, In re Chicago v. Barker, decided October 6, 1903, which case has not yet been reported, but a transcript of the opinion is before us. In that case it was sought to enjoin the enforcement of an ordinance similar to this one, and the injunction was allowed.

There is no decision of the Supreme Court of this state directly upon the question involved here, and we are aware this is the first ordinance of this kind ever passed in this state. But in Marmet v. State, 45 Ohio St. 63 [12 N. E. Rep. 463], the validity of a statute similar in some respects to this ordinance was involved.

This is from the syllabus:

"The general assembly has power (except as limited by Sec. 18 of the schedule to the constitution) to regulate occupations by license, and to compel, by imposition of a fine, payment of a reasonable fee, where a special benefit is conferred by the public upon those who follow an occupation, or where the occupation imposes special burdens on the public, or where it is injurious to or dangerous to the public."

This statute authorized the city of Cincinnati to impose a license fee not only upon those engaged in special occupations, but upon the

owners of all vehicles used upon the streets of the city, and in the second paragraph of the syllabus this is found:

"The provisions of Secs. 1, 2, 22, 26 and 35 of the act of April 16, 1883 (80 O. L. 129), and Sec. 29 as amended March 25, 1884 (81 O. L. 78), which require that in cities of the first grade of the first class each proprietor or lessee of a theater, etc., and all keepers or owners of livery, sale or boarding stables, every dealer in secondhand articles and keepers of junk shops, and the owners of all vehicles used upon the streets of the city, shall pay license as therein provided; that no person shall engage in any such business until a license therefor shall have been obtained, and that any person who shall violate any of the provisions of the act shall be punished by fine, are not in conflict with the constitution."

So that we have here a statute, which so far as imposing a license on vehicles is concerned, was similar to the ordinance involved in this case, and its provisions apparently were as broad as those of this ordinance.

This statute went further and imposed a license fee upon theaters, junk shops, etc., but it provides in regard to vehicles that the owners of all vehicles used upon the streets of the city shall pay annual license fees and recites the various kinds of vehicles and the fees. It is said by counsel for the plaintiff in error that Marmet was not using ordinary vehicles, but was engaged in transporting heavy articles over the streets of the city of Cincinnati, and that is true, and therefore it is urged that this case is not decisive of the point in question here. But in discussing the question, Judge Spear, who delivered the opinion, considered the whole question as to the validity of the provision imposing a license fee upon all persons, and he says on page 75:

"Nor is this exercise of power as to vehicles generally an unreasonable exercise of it. The ownership of the streets is in the city, and the duty is imposed to keep them open, in repair and free from nuisance. This involves, in many ways, the expenditure of large amounts of money. It calls for constant vigilance as to all streets, and for extensive pavements upon the more important ones. These, ordinarily, are laid at the expense of the owners of the abutting property. If neglected they soon wear out, and then, in most cases, another burden is imposed on the same property for repaving. It matters not that a particular property owner has not kept a vehicle, and has not had direct agency in the destruction of the street. If enough pressure is brought to procure the city's order for a new pavement, he must, *nolens volens*, pay the assessment, and mean-

Sterling v. Bowling Green.

time pay the general tax upon his property for the making of repairs to such of the streets as the authorities see fit to repair.''

And on page 76, speaking of those who use the streets with vehicles, he says:

''They thus receive a special, direct benefit by the original outlay, and by the repairs from time to time, and by such use impose burdens upon the property owners and the public at large. A proportion of them, those who own taxable property, contribute in taxes toward the repair fund (and may be among those whose property is subject to assessment for the original improvement); but many do not, and thousands of property owners use no vehicles of any kind. Why should not those favored ones pay a small sum toward making good that which they wear out? Especially wearing on the streets are the heavy loads transported by those in occupations similar to that of the plaintiffs in error, Marmet and Hill, and the heavier the load the greater number of horses necessary to propel it. Hence the license fee is properly graded according to the number of horses used. The principle involved is not different from that upon which the establishment of toll roads, and the authority to collect tolls of those traveling upon them, and to grade the amount charged in proportion to damage inflicted or use made by the traveller, is sustained. Then, too, there is force in the point made by counsel that special police regulation is needed upon the streets of large cities to prevent accidents, to protect pedestrians at crossings, to prevent fast and reckless driving, and to prevent blockades.''

This case seems to sustain the proposition that a license fee may be imposed as was done by this statute, upon all those who use the streets. If a statute containing these provisions is valid and not in conflict with any provision of the constitution, an ordinance passed by a municipality pursuant to the power conferred upon it by the legislature is not invalid. The difference between the use of the streets by drays, omnibuses and vehicles of that kind, and the use by ordinary vehicles is one of degree only. They wear out the streets faster perhaps than one would in driving about with an ordinary wagon or buggy, but each and all have the privilege of using the streets, being the owners of such vehicles, and one engaged in ordinary business outside of these particular classes may use the streets approximately as much as one of those.

The plaintiff in the case at bar, it seems, was a retired farmer, living in the city of Bowling Green, and on the date in question was driving about the streets in a one-horse buckboard collecting rents.

A doctor with a large practice in a city might use the streets as much as the owner of a hack; a groceryman with a delivery wagon going about the streets might use them as much as one of those particular classes; and one might mention others, and if the municipality has the power to impose a license fee upon those who are engaged in those particular classes of business, upon the theory that they make a special use of the streets, it seems to us that it has power to impose such a license fee upon all who use the streets.

An ordinance, after which, it is said, the one in question was framed, was before the supreme court of Indiana in Terre Haute v. Kersey, 64 N. E. Rep. 469 [159 Ind. 300]. The general provisions of that ordinance were very similar to this one, and after a full discussion of the question by Judge Jordan, who delivered the opinion, the ordinance was sustained. The authorities are collected in this opinion and reviewed. On page 472 of the opinion, the court say:

"When such power is, however, clearly conferred upon such municipalities, courts have generally upheld the proper exercise thereof. The running of hacks, carriages and other vehicles over the streets of a city, whether used thereon for public or private purposes, will necessarily in course of time, impair and wear them out; and by reason of this well recognized fact, cities are subjected to large expenditures of money to repair the wear and tear upon their streets due in the main to the use of running vehicles thereon. Under such circumstances there is nothing unjust or wrong in a city, when so empowered by the legislature, requiring the payment of a properly or reasonably graduated tax, as in the case at bar, which must be considered in the nature of a toll imposed for the exercise of the privilege of using the streets by the means of vehicles."

And on page 473 the court say:

"The fact that a vehicle is not used by its owner for hire, but is only used on the streets in his own business or for his own pleasure, is of no special importance when the power is conferred to license and tax vehicles generally."

Farther along on the same page the court say:

"While it is true that a public street of a city or a town is a public highway open alike to travel, thereon, of every citizen, still this in nowise prevents the state, through the agency of its municipalities, from subjecting the right to use the street to reasonable conditions and restrictions. As cities in this state, under the law, are required to keep their streets in repair, the legislature in the exercise of its discretion, appears to have deemed it proper to authorize common councils thereof,

Sterling v. Bowling Green.

if they so desired, to exact that those who used them with wagons, carriages and other vehicles should contribute to such repairs by the payment of a reasonable amount on account of such use. The ordinance in question seems to so grade the tax imposed that the owners of vehicles whose use of the streets in the course of time would subject them to the most wear are required to pay the greater tax.''

It seems to us that the provisions of this ordinance are not unreasonable or unconstitutional. If this power is conferred upon the municipality, as we hold it is by this statute, it has the right to use the power and impose this license fee or toll as it is called by Judge Spear upon all those who have the use of the streets. There is nothing unjust in requiring those who use the streets, who have the benefit of the paving and other improvements to pay these fees in addition to the general tax imposed upon all citizens—to pay this beyond what those pay who do not make such use of the streets.

A court should not declare a statute unconstitutional unless it is clearly so, practically beyond all reasonable doubt, and finding as we do that this power is conferred upon the municipality by the statute, to hold that the ordinance was void, would be, in effect, to hold that the statute was unconstitutional. It is not for us to say whether it was good policy or bad policy to enact such an ordinance, but if the city of Bowling Green through its council had the power to pass such an ordinance as this, then it is a valid ordinance.

It is urged that there are other provisions of the ordinance which are unjustly discriminating and unfair, that therefore the ordinance is unreasonable and void. One of them is the provision requiring hackmen from outside the city at the time of the county fair to pay a license fee of five dollars a day, and ten · dollars a day for larger vehicles. It is said they would be required to pay this for the entire year, which would be exorbitant, but whether this would require the payment of more than that sum per day for the time engaged at the fair we need not determine; nor need we determine whether this extra fee imposed on outsiders is valid. No one is complaining of having been injured by this, and we do hold simply that if that requirement is invalid, that would not affect the validity of the remainder of the ordinance. It is not of such importance that it can be said the council would not have passed the ordinance with this part omitted.

The same rule applies to an ordinance as to a statute. In Piqua v. Zimmerlin, 35 Ohio St. 507, it is held that, "A part of an ordinance may

be void and the remainder valid." And on page 511 of the opinion the court say:

"If it be true that the second section, either in whole or in any of its parts, is open to the objection stated, that circumstance does not affect the provisions of the first section, unless the two sections are so connected in their subject-matter, and inseparable in their provisions, as to lead to the inference that the first section would not have been adopted without the second. The same rule applies to a by-law, or ordinance, that applies to a statute; and that is, that where the statute consists of severable and independent parts, having no general influence over one another, and a part is valid and a part is void, the part which is valid is operative, and will be carried into effect."

Another objection made to the ordinance is that it discriminates unfairly, in that it permits persons living outside to come into the city and use the streets without paying the license fee.

That was true in the statute before the Supreme Court in the Marmet case; where farmers were permitted to come into Cincinnati without paying the fee, and Judge Spear discussed that question and says there are very good reasons why they should be permitted to come in and bring the necessaries of life into the city. That provision of the ordinance is not unreasonable.

There are one or two other objections of like character, but we will simply say there are none of them of sufficient importance to warrant us in declaring the ordinance invalid. We will not undertake to pass upon them, as they are not involved in this case.

The purpose and object of this ordinance was to impose these license fees upon all residents who use the streets in this manner, and these minor provisions of the ordinance, if invalid, are not so inseparably connected with the general purpose of the ordinance as to invalidate it. Nor do we think it is invalid as urged on the ground that it confers judicial powers upon the city auditor and chief of police. The provision heretofore referred to provides that if the city auditor is not satisfied with the description of the vehicle he shall refer it to the chief of police who shall examine and report a correct description of the vehicle to the auditor. The citizen still has his right, if he is not satisfied with the finding of these officers, to test the matter in the courts.

The provision that if a person who has one horse and more than one buggy, the license shall be on one buggy, and if he has two horses the license shall be on two vehicles is not unreasonable, the theory being that the man who has two horses would probably use the streets more than the man with only one. This may not work exact justice in

Sterling v. Bowling Green.

all cases, but it is not so unreasonable that it should be declared void by the court. As said by Judge Spear in Marmet v. State, *supra*, page 69:

"It may be added that absolute equality as to burdens, whether applied to taxes or other subjects of legislation, is not to be expected in our laws. The wisdom of man has not yet devised a system of equalizing burdens so perfect in its application and so thorough in its enforcement as to leave no room for adverse comment or criticism."

I have endeavored to cover in a general way the objections that were made in this ordinance. We are of the opinion that it does not violate any provision of the constitution of this state or of the United States, and that no part of it is so unreasonable that the court should declare the ordinance invalid.

The judgment of the court of common pleas and of the mayor will therefore be affirmed.

**Haynes** and **Marvin, JJ.,** concur.